UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MARK BOYKIN, | Case No. CV 18-02417-AS |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On March 26, 2018, Plaintiff filed a Complaint seeking review of the denial of his application for Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On August 29, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15-16). On February 14, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting

forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 26).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On March 6, 2014, Plaintiff, formerly employed as an industrial pipe fitter and a boilermaker (see AR 58-60, 412, 414), filed an application for Supplemental Security Income, alleging a disability since February 25, 2010. (See AR 360-65).

On August 23, 2016, the Administrative Law Judge ("ALJ"), John C. Tobin, heard testimony from Plaintiff (represented by counsel) and vocational expert Alan Boroskin. (See AR 55-98). On December 7, 2016, the ALJ issued a decision denying Plaintiff's application. (See AR 24-45). After determining that Plaintiff had severe impairments -- "diabetes mellitus; hypertension; status post right upper extremity injury; peripheral neuropathy in the left upper extremity; [and] cervical degenerative disc disease" (AR 37)[1] - but did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments (AR 38), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light

---

[1] The ALJ found that Plaintiff's medically determinable mental impairment of depression was nonsevere. (AR 37).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

2

work[3] with the following limitations: right hand dominant; can occasionally use right hand for handling and fingering; and no limitations to left upper extremity. (AR 38-43). The ALJ then determined that Plaintiff was not able to perform any past relevant work (AR 43-44), but that Plaintiff could perform jobs existing in significant numbers in the national economy and was therefore not disabled within the meaning of the Social Security Act. (AR 44-45).

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 352-53, 356-57). The request was denied on February 20, 2018. (See AR 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

3

omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[4]

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in failing to fully and fairly develop the record with regard to the residuals of the stroke Plaintiff suffered on September 8, 2014. (See Joint Stip. at 4-6, 9-10).

**DISCUSSION**

**A. The ALJ Did Not Fail to Fully and Fairly Develop the Record**

Plaintiff asserts that the ALJ "should have either called a medical expert or sent [Plaintiff] out for a consultative examination to determine what his true residual functional capacity was after he had the st[r]oke." (See Joint Stip. at 4-6, 9-10). Defendant asserts that the ALJ had no duty to further develop the record regarding Plaintiff's "stroke residuals." (See Joint Stip. at 7-10).

Although Defendant alternatively asserts that Plaintiff's claim is waived based on his failure to raise it before the Commissioner (see

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

Joint Stip. at 8), the Court will proceed to examine the merits of Plaintiff's claim.

An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014)(citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence."); Brown v. Heckler, 713 F.2d 441, 441 (9th Cir. 1983)("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[,]" even when the claimant is represented by counsel). Nonetheless, it remains Plaintiff's burden to produce evidence in support of his disability claim. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)(as amended). Moreover, the ALJ's duty to develop the record is triggered only when there is "ambiguous evidence" or when "the record is inadequate to allow for proper evaluation of the evidence[.]" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). An ALJ has broad discretion in determining whether to order a consultative examination and may do so when "ambiguity or insufficiency in the evidence . . . must be resolved." Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001)(citation omitted); see also 20 C.F.R. § 416.919a(b)("We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim.").

In the discussion of the medical evidence, the ALJ made the following statements:

> . . . [M]ore recent medical records indicate the claimant had suffered a cerebrovascular accident ("CVA") and admitted to the hospital on March 2, 2016 (Exs. E16F, p. 5; E22F, p. 19). He had a prior cerebellar stroke without residual deficit. However, the claimant's recent CVA affected his left side with soft tissue tightness due to immobilization resulting with soft tissue pain (Ex. E20F). He had limitation with his bilateral use of his bilateral extremities with a decline in balance and posture (Ex. E20F, p. 3). However, he was conservatively treated with occupational therapy (Ex. 20F, p.4). And he showed good progress with therapy (e.g. Exs. E20F, p. 8; E23F, p.2).

(AR 41).

Plaintiff, citing to a statement in a Radiology Results report dated September 8, 2014 at Providence Little Company of Mary Medical Center ("Providence") (see AR 549 ["Indication: Stroke. Altered mental status"]), contends that the ALJ improperly stated that Plaintiff's stroke took place on March 2, 2016, rather than on September 8, 2014 (which was four months after the May 27, 2014 internal medicine consultative examination, see AR 540-44[5]). (See Joint Stip. at 4, 9).

---

[5] At the time of the May 27, 2014 internal medicine consultative examination, Plaintiff did not have any stroke symptoms. (See AR 540 ["The claimant thinks that he also might have had a stroke in the past,
(continued...)

6

Contrary to Plaintiff's assertion, the ALJ did not improperly state that Plaintiff suffered a stroke on March 2, 2016. The ALJ was discussing records concerning Plaintiff's admission to the hospital on March 2, 2016 for a cerebrovascular accident that had occurred days before. (See AR 41, citing AR 695 [Providence Note dated March 2, 2016, stating that Plaintiff was brought to the emergency room due to a cerebrovascular accident] and 761 [Providence Nephrology Consult Note dated March 2, 2016]). Indeed, there is no record of Plaintiff suffering a stroke before or on March 2, 2016. (See AR 695-99 [Providence Note dated March 2, 2016, stating that "CT scan of the brain revealed no acute hemorrage or infarct"], 761 [Providence Nephrology Consult Note dated March 2, 2016, stating that the CT scan on Plaintiff "did not show a stroke."]; see also AR 63-64 [Plaintiff testified at the hearing that he did not suffer a stroke in March 2016]).

At the August 23, 2016 administrative hearing, Plaintiff testified that he suffered a stroke "in November last year." (AR 64). The ALJ's statement about Plaintiff's "prior cerebellar stroke without residual deficit" concerned a stroke suffered by Plaintiff in December 2015. (See AR 586 [Providence Emergency Department Provider Notes dated December 20, 2015, stating: "CT brain shows some motion artifact but there is evidence of a moderate sized left cerebellar subacute infarct. There is also a small hypodense area in the right posterior temporal region that may represent an old or subacute infarct. There is no evidence of any mass or bleed."], 577 [Providence Radiology Results Note dated December 20, 2015, stating: "Moderate-sized subacute infarct in

---

[5] (...continued)
but he denies having any symptoms at this time."]).

the left cerebellum noted. Small hypodense area in the right posterior temporal region is also seen which may represent older subacute or early chronic infarct. Both are new since the prior exam. No hemorrhage is seen."], 579-81 [Providence Discharge Summary dated December 21, 2015, stating that the primary cause of Plaintiff's hospitalization was a cerebellar stroke], 630-31 [Harbor Community Clinic Progress Note dated December 31, 2015, stating that "[[S]/p CVA about 3 weeks ago . . . , went to the hospital about 5 days after having the stroke."], 622 [Harbor Community Clinic Note dated January 29, 2016, stating that Plaintiff "recently suffered a stroke"], 695 [Providence Note dated March 2, 2016, noting that Plaintiff had a "prior cerebellar stroke without residual deficit" and that Plaintiff had a cerebral vascular accident in December 2015], 761-62 [Providence Nephrology Consult Note dated March 2, 2016, noting that Plaintiff had a cerebral vascular accident in December 2015], 804 [Providence Discharge Summary dated March 15, 2016, noting that Plaintiff had a "[h]istory of stroke with mild residual deficit: Previous cerebellar stroke in December 2015"].

Moreover, there is no indication in the record, including the September 8, 2014 Providence Radiology Results report relied on by Plaintiff, that Plaintiff actually suffered a stroke on September 8, 2014. (See AR 549 [Findings from a "CT brain no IV contrast": Ventricles and sulci are normal. There is no hemmorrhage masses or midline shift. No skull fracture is identified."]).

The ALJ properly considered the records concerning Plaintiff's stroke in December 2015 and Plaintiff's cerebovascular accident

resulting in hospitalization on March 2, 2016. (See AR 41). The ALJ noted that in December 2015 Plaintiff suffered a cerebellar stroke which caused Plaintiff to suffer soft tissue tightness due to immobilization resulting in soft tissue pain, and limited use of the bilateral upper extremity based on a decline in balance and posture. (See AR 630-31 [Harbor Community Clinic Progress Note dated December 31, 2015, stating that Plaintiff "still having residual numbness in left arm and left side of body down to the hip[,] no numbness in legs[,] has loss of vision in left eye"], 726-28 [Dynamix Rehabilitation ("Dynamix") Occupational Therapy Initial Examination report dated January 8, 2016, stating: "Patient sustained CVA affecting left side with soft tissue tightness due to immobilization resulting with soft tissue pain."; and "Patient presents with late effects CVA with progressive soft tissue pain due to developing contractures. Patient limited with bilateral UE use with decline in balance and posture impairing patient with household mobility and self-care tasks."], 740-41 [Dynamix Daily Note/Billing Sheet dated January 8, 2016 (same second entry)], 622 [Harbor Community Clinic Note dated January 29, 2016, stating that Plaintiff "recently suffered a stroke, which has left him with left sided numbness in his extremities and loss of vision in his left eye"], 738-39 [Dynamix Daily Note/Billing Sheet dated February 12, 2016, stating that "Patient limited with overall strength to left shoulder due to progressive posturing resulting with soft tissue shortening"], 736-37 [Dynamix Daily Note/Billing Sheet dated February 16, 2016 (same entry)], 729 [Dynamix Occupational Therapy Progress Note dated February 23, 2016, stating that "Patient sustained CVA affecting left side with soft tissue tightness due to immobilization resulting with soft tissue pain"]).

The ALJ also noted that Plaintiff was treated with occupational therapy and showed good progress with therapy. (See AR 726-28 [Dynamix Occupational Therapy Initial Examination report dated January 8, 2016], 740-41 [Dynamix Daily Note/Billing Sheet dated January 8, 2016], 738-39 [Dynamix Daily Note/Billing Sheet dated February 12, 2018, stating that Plaintiff "tolerated [treatment] well, with [treatment] emphasis on tone reduction and re-alignment to left anterior rotator cuff allow for soft tissue pain reduction"], 736-37 [Dynamix Daily Note/Billing Sheet dated February 16, 2016 (same entry)], 734-35 [Dynamix Daily Note/Billing Sheet dated February 18, 2016, stating that Plaintiff "tolerated treatment well, with [treatment] emphasis on tone reduction to allow for proper re-alignment to anterior cuff with tone reduction to left upper trapezium allowing for increase gross motor movement and functional use"], 729-31 [Dynamix Occupational Therapy Progress Note dated February 23, 2016, stating: "Good progress with left shoulder re-alignment allowing for increase gross motor movement with reduction in tone and pain. Patient progressing well with increase use with self-care tasks."], 732-33 [Dynamic Daily Note/Billing Sheet dated February 23, 2016 (same entry)].

Plaintiff has failed to point to any evidence in the record showing that he suffered a stroke in September 2014, had medical issues related to a stroke allegedly suffered in September 2014, or that he had medical issues related to his December 2015 stroke after March 2016. See Mayes v. Massanari, supra ("It was [Plaintiff's] duty to prove that she was disabled"). Although Plaintiff cites to medical records after March 2016 (see Joint Stip. at 4, citing AR 946-48 [Torrance Memorial Medical

10

Center Emergency Department Note dated May 10, 2016, stating: Plaintiff "complains of constant worsening throbbing left arm pain from the elbow into the entire left hand which has been worsening for the past month since he ran out of his oxycodone. The patient reports having a stroke last November and states the pain is a consequence of the stroke."], that medical issue did not relate to his December 2015 stroke. Moreover, Plaintiff testified that his March 2016 hospitalization was not related to his stroke. (AR 64). In any event, there is no indication in the medical records that Plaintiff suffered effects from his December 2015 stroke that lasted or were expected to last for a period of 12 months. See Webb v. Barnart, 433 F.3d 683, 686 (9th Cir. 2005)("The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."; citing 42 U.S.C. § 423(d)(1)(A)).

Thus, the ALJ did not fail to develop the record further by not ordering a medical expert or a consultative evaluation, since the evidence relating to any stroke suffered by Plaintiff was not ambiguous, and the record was adequate to properly evaluate the residuals of a stroke that Plaintiff suffered in December 2015. The ALJ's decision was supported by substantial evidence.

//
//
//

11

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 26, 2019

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE